## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CORTEZ GILLUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No.   3:19-CV-1039-GCS** |
| **ROB JEFFREYS,** | ) | |
| **MOHAMMED SIDDIQUI,** | ) | |
| **and WEXFORD HEALTH SOURCES,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

Before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Siddiqui and Wexford Health Sources, Inc. (Doc. 47, 57). Specifically, Defendants argue that Plaintiff Cortez Gillum failed to exhaust his administrative remedies because he did not properly complete the grievance process before filing his lawsuit. Gillum opposes the motion arguing that Defendants have impeded his ability to exhaust his administrative remedies by not responding to his grievances. (Doc. 52, 53).

On July 28, 2020, the Court held a hearing on the summary judgment motion. (Doc. 60). During the hearing, the Court heard testimony from Gillum and from Kelly Pierce, a

grievance officer at Menard Correctional Center ("Menard"). The Court took the matter under advisement. Based on the following reasons, the undersigned **GRANTS** the motion for summary judgment filed by Defendant Siddiqui and Defendant Wexford Health Sources, Inc. ("Wexford") on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, Gillum, an inmate within the Illinois Department of Corrections ("IDOC") currently housed at Pontiac Correctional Center ("Pontiac"), filed a complaint for deprivations of his constitutional rights that occurred while he was housed at Menard. (Doc. 1). The Court, after conducting the preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, allowed Gillum to proceed on the following claims: Count 1 against Dr. Siddiqui and Wexford for deliberate indifference to medical care for the delay and denial of medical treatment for his shoulder injury; and Count 2 against Dr. Siddiqui for deliberate indifference to medical care for denying him further medical treatment for a sinus infection after previously prescribed medication had been ineffective.[1]  (Doc. 18, p. 11). Further, as to Defendant Jeffreys, the Court found as follows: "Jeffreys will be dismissed in his individual capacity but, to the extent Plaintiff is seeking injunctive relief, Jeffreys will remain in the case in his official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)(proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out)." *Id*. at p. 6.

---

[1]      The Court also severed Gillum's unrelated allegations into four other causes of action which Gillum ultimately voluntarily dismissed. *See* 19-1228-SMY; 19-1229-NJR; 19-1231-NJR; and 19-1230-SMY.

FACTS

Gillum is an inmate within IDOC and currently housed at Pontiac. At the time of the allegations in the complaint, Gillum was housed at Menard. During the hearing, Gillum testified that two grievances, #107-12-18 and #350-4-19, were the only grievances relevant to the claims in this case.[2] The record reflects the following as to the two grievances.

Gillum filed emergency grievance #107-12-18 dated December 30, 2018 regarding medical treatment and an injury. During the hearing, however, Gillum testified that the date of December 30, 2018 was his mistake and that he probably filed the grievance on November 30, 2018. In the grievance, Gillum claims that he fell and injured his left shoulder. He requested to be seen by an outside specialist to repair the injury to his shoulder. The grievance does not contain any complaints about a sinus infection. On December 10, 2018, the grievance was deemed non-emergent by the Chief Administrative Officer ("CAO"). On December 17, 2018, the Menard Grievance Office received grievance #107-12-18 regarding medical treatment that was previously deemed a non-emergency, and the grievance was forwarded to Clinical Services for the counselor's response. On April 26, 2019, the Counselor responded and included a response from the Health Care

---

[2]     Thus, the Court will address only these two grievances regarding exhaustion of the claims in this case.

Unit ("HCU"). Defendant Siddiqui and Health Care Unit Administrator ("HCUA") Angela Crain responded to Gillum's grievance in a memorandum dated April 25, 2019, which noted that Gillum was seen by an orthopedic specialist on December 31, 2018. The memorandum further noted that on February 28, 2019, Gillum refused to be seen by physical therapy for an evaluation.

Next, Gillum included a letter dated April 28, 2019 to the Grievance Officer regarding grievance #107-12-18. The grievance contains a counselor's response dated April 26, 2019 instructing Gillum to see the attached response from the HCU. The grievance also contains Grievance Officer and CAO responses dated May 16, 2019 and May 22, 2019, respectively. Further, the Grievance Officer noted that Gillum attached 4 handwritten pages to this grievance, stating that he believed his medical issues were not being addressed. The grievance was deemed moot by the CAO as Gillum refused his physical therapy referral and as of the grievance review, there were no requests received from Gillum on this issue.

In Gillum's complaint, he attached a letter dated June 16, 2019 addressed to the Menard Grievance Office requesting a copy of the grievance and response to his grievance from the Grievance Office. He received a response to his letter informing him that the grievance was deemed moot on May 22, 2019 and instructed him to contact the Records Office for a copy. Gillum then wrote a letter to the Menard Records Office dated June 20, 2019 requesting a copy of his #107-12-18 grievance. At the top of the letter, there is a note that appears to be a response from the Records Office which reads, "[r]esubmit

with money voucher." At the bottom of the letter, there is a handwritten notation by Gillum which reads, "[r]eceived on 7/16/2019 for resubmitt (sic) with money voucher."

Gillum filed another emergency grievance #350-4-19 dated April 13, 2019 regarding medical treatment, staff conduct, and accommodations under the Americans with Disabilities Act ("ADA"). The grievance does not contain any complaints about a sinus infection. On April 19, 2019, the grievance was deemed non-emergent by the CAO. The grievance contains a counselor's response dated July 9, 2019 and a Memorandum from Defendant Siddiqui and HCUA Crain. The grievance contains Grievance Officer and CAO responses dated July 22, 2019 and August 13, 2019, respectively. The grievance was deemed moot by the CAO as Gillum refused his physical therapy referral and as of April 25, 2019, he made no requests for shoulder issues. There is no record that Gillum appealed this grievance to the Administrative Review Board ("ARB").

Gillum's Cumulative Counseling Summary reveals the relevant entries as to these two grievances. On May 19, 2014, Gillum participated in the Orientation process and was provided with the Orientation Manual.

On December 7, 2018, the Menard Grievance Office received grievance #107-12-18 dated December 30, 2018 marked emergency by Gillum regarding medical treatment/left shoulder.

On December 17, 2018, the Menard Grievance Office received grievance #107-12-18 from Plaintiff regarding medical treatment that was previously deemed a non-emergency. The grievance was forwarded to Clinical Services for the counselor's response.

On April 18, 2019, the Menard Grievance Office received grievance #350-4-19 dated April 13, 2019, which was marked an emergency by Gillum. He complained about his shoulder injury, that diabetics be given their insulin, and that he should still be able to go to night yard. On April 26, 2019, the HCU's response to grievance #107-12-18 was written verbatim in the counseling records.

On May 2, 2019, the Menard Grievance Office received grievance #350-4-19 from Gillum that was previously deemed a non-emergency. The grievance was forwarded to Clinical Services for the counselor's response. On May 8, 2019, the Menard Grievance Office received grievance #107-12-18 for second-level review.

On June 18, 2019, the Office Coordinator noted that she received a KITE from Gillum dated June 16, 2019 stating that he did not receive a response to grievance #107-12-18 and would like to have a copy of it. The Office Coordinator replied via institutional mail that grievance #107-12-18 was deemed moot on May 22, 2019 and to contact the Records Office for a copy.

On July 8, 2019, Correctional Counselor II Hood noted that she conducted a gallery tour and spoke with Gillum who stated that he never received a response to grievance #107-12-18. She noted that per the CHAMPs (Counseling Summary), the Grievance Officer received the same question and advised Gillum of the results of his grievance and to write the Grievance Office for a copy.

On July 9, 2019, it was noted that grievance #350-4-19 was reviewed by the HCUA, who indicated that Gillum self-reported going to the yard instead of waiting on the insulin

line. A response was sent to Gillum, and he was instructed to use nurse sick call if any other issues arose.

On July 11, 2019, the Office Associate of the Menard Record Office noted that she received a KITE from Gillum requesting copies of his grievance. The Office Associate responded to Gillum via institutional mail instructing him to resubmit his request with a money voucher.

On July 22, 2019, the Menard Grievance Office received grievance #350-4-19 for second-level review. On July 22, 2019, it was noted that grievance #350-4-19 was received by the ADA Coordinator and it was determined that Gillum did not require accommodation.

On August 15, 2019, it was noted that the Grievance Officer's response to grievance #350-4-19 was placed in the transfer business mail to be sent to Pontiac.

Gillum's ARB IGRV inmate grievance history does not include any record of grievance #107-12-18 or grievance #350-4-19.

LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following sequence and procedures to be followed:

(1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the IDOC, Gillum was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 Ill. Admin. Code § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 Ill. Admin. Code § 504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, the inmate can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably

feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures further allow some grievances to be submitted directly to the ARB for consideration. *See* 20 ILL. ADMIN. CODE § 504.870(a). Those grievances include:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 ILL. ADMIN. CODE § 504.870(a)(1-4).

## ANALYSIS

Defendants argue they are entitled to summary judgment as Gillum did not properly exhaust his administrative remedies regarding the claims in this case. Specifically, Defendants maintain that he never appealed the two relevant grievances to the ARB. Further, Defendants assert that neither of these grievances contain any references to his sinus infection. Gillum opposes the motion arguing that he properly used the grievance procedure; that he did not receive responses to his grievances; and

that he cannot be responsible for prison staff's conduct once he submits mail to the prison staff for mailing. The Court disagrees with Gillum and does not credit his testimony.

First, the record clearly indicates that Gillum was aware of the grievance procedures at Menard and Pontiac. Gillum testified that he knew of the grievance process, the appeal times, and the steps regarding the exhaustion of administrative remedies. Gillum likewise understood such steps when he filed his grievances with the prison and when he filed his complaint.

As to grievance #107-12-18, the Court finds that Gillum did not exhaust his administrative remedies because he did not appeal this grievance to the ARB. Gillum did not attach any evidence to his Complaint that he resubmitted his request to the Menard Record Office with a money voucher. Also, the Counseling Records (which contain a note that the Records Office received a request from Plaintiff for copies of his grievance and that Gillum was told to resubmit his request with a money voucher) do not contain any entries that Gillum resubmitted his request with a money voucher. The ARB records show that Gillum did not appeal grievance #107-12-18 to the ARB. Further, the records show that Gillum was sent a copy of his grievance with Grievance Officer and CAO responses and then had the opportunity to request another copy, but he did not, and therefore, he did not properly exhaust this grievance as to Dr. Siddiqui or Wexford.

As to grievance #350-4-19, the Court likewise finds that Gillum did not properly exhaust his administrative remedies as to Siddiqui. The grievance was received by the Menard Grievance Office on April 18, 2019. On April 18, 2019, the CAO received the

grievance and deemed it non-emergent on April 19, 2019. Gillum's counselor received the grievance on May 2, 2019 and responded on July 9, 2019. The grievance was returned by the counselor to Gillum on July 15, 2019 and then the Grievance Office received the grievance for second-level review on July 22, 2019. On August 13, 2019, the CAO received the grievance and responded on August 13, 2019. The grievance with the Grievance Officer and CAO responses was returned to Gillum on August 15, 2019. There is a stamp on the CAO's response that the grievance was received by the Pontiac Records Office on August 22, 2019. The record reveals that one copy was distributed to Gillum's Master File and the other copy was distributed to Gillum. The ARB records show that Gillum did not appeal grievance #350-4-19 to the ARB. Further, this grievance fails to contain any reference to Gillum's claim against Defendant Siddiqui regarding a sinus infection. Gillum did not properly or timely exhaust grievance #350-4-19 as to either Defendant Siddiqui or Defendant Wexford.

Next, the Court notes that in some circumstances an inmate's ability to exhaust the grievance process may be thwarted. This can occur, for example, if an inmate properly submits a grievance, but does not receive a response. In such circumstances, an inmate's administrative remedies are arguably no longer available to him, and the inmate may thus proceed with a lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809

(noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

However, such a situation does not exist under the circumstances of this case. Gillum contends that the grievance counselor only has thirty (30) days to respond to a grievance. Gillum offers no support/evidence for this argument and the grievance process does not have such a timeline for a grievance counselor's response. The Illinois Administrative Code does not require the grievance counselor to respond to an inmate's grievance within 30 days. *See* 20 ILL. ADMIN. CODE §§ 504.810-850. The only 30-day requirement within these cited rules is that the inmate's appeal must be received by the ARB within 30 days after the decision by the CAO. *See* 20 ILL. ADMIN CODE §504.850. Thus, Gillum failed to demonstrate that the failure to receive a response to his grievances by the Counselor within 30 days constitutes exhaustion of those grievances. Accordingly, the Court rejects this argument.

Furthermore, the Court rejects Gillum's contention that he appealed both grievances to the ARB as Gillum offers no evidence to demonstrate that he did, and the record reveals otherwise. Specifically, Gillum argues that once he puts something in the prison mail, he is not responsible for the whereabouts of that mail after the fact. Assuming *arguendo* that Gillum did appeal these grievances, Gillum has not submitted any evidence to show what dates he allegedly mailed the appeals to the ARB or how the prison staff mishandled his mail. Moreover, looking at the timeline of both grievances it would appear that *if* Gillum did timely appeal the grievances to the ARB any time *after* May 22,

2019 and August 15, 2019, respectively (the dates the records reveal the COA's responses were made as to the two grievances), he filed this lawsuit on September 25, 2019. This short period of time does not give either the ARB or the IDOC Director the appropriate time to decide the merits of the appeals of the grievances. *See, e.g.*, 20 ILL. ADMIN. CODE § 504.850(a)(stating that "[t]he appeal must be received by the Administrative Review Board within 30 days after the date of the decision."). *See also* 20 ILL. ADMIN. CODE § 504.850(e)(stating that "[t]he Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances."). Without any evidence regarding the dates Gillum placed these appeals in the prison mail system, it is clear that *if* Gillum did timely appeal those grievances, he prematurely filed this lawsuit before the ARB and IDOC Director had time to consider the merits of his appeals. As such, the grievances were not properly exhausted. *See, e.g., Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010)(stating that prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). Gillum should have waited until he received a final determination from the Director of the Administrative Review Board on these two grievances before filing suit. The time frames for consideration of grievances under said section are "directory and not mandatory[,]" given the code language "whenever possible." *Beahringer v. Page*, 789 N.E.2d 1216, 1226 (Ill. 2003)(quoting 20 ILL. ADMIN. CODE § 504.830). It is clear from the authorities cited above that a prisoner cannot properly exhaust his administrative

remedies if he files suit during the pendency of a required administrative response period.

Neither of these two grievances can serve to exhaust administrative remedies as to the claims against the Defendants in this case. *See, e.g., Ford*, 362 F.3d at 398 (noting that no action shall be brought until exhaustion has been completed). Based on the record, it is clear that Gillum either did not appeal these grievances or he "jumped the gun" by filing suit before the grievance process was complete. Thus, he did not fully exhaust his administrative remedies prior to filing suit.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Siddiqui and Defendant Wexford's motion for summary judgment. (Doc. 47). The Court **DISMISSES without prejudice** Gillum's complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED.**

**Date:  August 25, 2020.**

Digitally signed
by Judge Sison 2
Date: 2020.08.25
11:28:35 -05'00'

_____

**GILBERT C. SISON**
**United States Magistrate Judge**